**SIGNED THIS: February 20, 2009**

_____
**MARY P. GORMAN**
**UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | In Bankruptcy |
| CHADDRICK RAYMOND CARVER, | ) | |
| | ) | Case No. 07-72602 |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| JEFFREY D. RICHARDSON, | ) | |
|   Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 08-7035 |
| | ) | |
| CHADDRICK RAYMOND CARVER, | ) | |
| | ) | |
| Defendant. | ) | |

## O P I N I O N

Before the Court for decision after trial is a two-count Amended Complaint filed by the Trustee, Jeffrey D. Richardson

-1-

("Trustee"), objecting to the discharge of the Debtor, Chaddrick Carver ("Debtor").  The Trustee alleges that the Debtor's discharge should be denied because, within one year of the case filing, Debtor transferred to his wife his share of the net sale proceeds and his real estate commission from the sale of their marital residence.  *See* 11 U.S.C. §727(a)(2)(A).  The Trustee further alleges that the Debtor's discharge should be denied because the Debtor's Statement of Financial Affairs and schedules contain false oaths.  *See* 11 U.S.C. §727(a)(4)(A).  For the reasons set forth below, the relief sought in the Trustee's Amended Complaint will be denied.  The Debtor will receive his discharge.

Prior to his bankruptcy filing, Debtor worked as a real estate agent associated with the Markwell-Weatherford Realty Group ("M-WRG") and bought and rented properties through his solely-owned business, Carver Properties, LLC.  Carver Properties, LLC acquired approximately 22 properties, all of which were subject to mortgages personally guaranteed by the Debtor.  The Debtor began encountering financial difficulties when the interest rates on a number of his mortgages were adjusted upwards by significant percentages. The resulting increased monthly mortgage payments caused a negative cash flow situation for many of the properties.

In the fall of 2006, the Debtor was desperately short of cash and in need of a loan to keep up the payments on his mortgages.  He was put in contact with Nick Muscato of Orlando, Florida.  Mr.

Muscato, through a limited partnership, agreed to loan the Debtor $200,000 at 25% interest payable in 60 days. The Debtor paid a $20,000 loan origination fee and, therefore, netted $180,000 from the Muscato loan. A promissory note was signed on September 21, 2006, requiring full payment on November 21, 2006. The Debtor hoped to be able to refinance his properties during that 60-day period but was unable to do so. The Debtor defaulted on the Muscato loan when it became due on November 21, 2006.

Carver Properties, LLC ceased doing business in early 2007. Some of the properties owned by the company were surrendered to the mortgage holders with deeds in lieu of foreclosure. Other properties became the subject of foreclosure actions. By the time the Debtor filed bankruptcy in late 2007, his company was no longer in possession of any of its properties.

The Debtor's wife, Tammy Carver, is a kindergarten teacher. She and the Debtor have been married for almost nine years and have two children. Mrs. Carver was not involved in her husband's real estate activities and was unaware of her husband's financial difficulties until May 2007.

In May 2007, the Debtor and his wife met with an attorney at Bourey Law Offices to discuss the Debtor's financial situation. Bankruptcy was one of the options discussed. In addition, the past-due Moscato loan and the potential sale of the Carvers' marital residence were discussed. After the conference, the

Carvers listed their home for sale with M-WRG. The Debtor was the individual listing agent. The house sold on July 26, 2007, for $505,000.

The Carvers netted $206,969.10 from the sale of their home. They received the proceeds in one check, and they both endorsed the check. Mrs. Carver deposited one-half of the proceeds in her separate credit union account. She deposited the other half - the Debtor's share of the proceeds - in a new account she opened at the credit union. The new account was owned solely by Mrs. Carver and only she had check writing privileges on the new account.

As a cost of selling their home, the Carvers paid a $30,300 real estate commission which was split between M-WRG as the listing office and the buyer's real estate broker. As the listing agent, the Debtor was entitled to some portion of the commission paid to M-WRG. Although it is unclear exactly how much the Debtor actually received, it is undisputed that at some point the Debtor received a commission check from M-WRG and endorsed the check to Mrs. Carver.

In the meantime, Mr. Muscato was threatening to sue and had retained local counsel to pursue collection of the past-due promissory note. On September 10, 2007, the Debtor and Mr. Muscato agreed to a settlement wherein the Debtor would wire $85,000 to Mr. Muscato in exchange for a release. The release was conditioned on the Debtor not filing bankruptcy within the 90-day period after the

check was issued.  The settlement also required the Debtor to deed a rental property he owned individually to Mr. Muscato and to assign all leases on that property to Mr. Muscato.

To complete the settlement, Mrs. Carver wired the $85,000 to Mr. Muscato from the new credit union account.  Thereafter, she used the remaining funds in the account to pay the Debtor's bills, his business expenses, and his share of family living expenses.

The Debtor filed his voluntary petition pursuant to Chapter 7 of the Bankruptcy Code on December 17, 2007.  On March 14, 2008, Trustee filed a timely Complaint objecting to the Debtor's discharge.  Trial was held on October 22, 2008.  On October 24, 2008, Trustee filed a Motion to Amend Adversary Complaint wherein he alleged that the evidence presented at trial supported a denial of the Debtor's discharge on grounds not specifically alleged in the original Complaint and that he was entitled to amend his Complaint to conform to the proof presented. After further hearing and over the objection of the Debtor, the Court granted the Motion to Amend.  The Debtor was granted time to file an answer to the Amended Complaint and to submit an additional closing argument in writing based on the Amended Complaint.  The case is now ready for decision.

The discharge provided by the Bankruptcy Code is granted only to honest debtors. <u>Grogan v. Garner</u>, 498 U.S. 279, 286-87, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991).  Issues raised by

objections to discharge should be liberally construed in favor of debtors in order to preserve the "fresh start" goal of the Bankruptcy Code. In re McWilliams, 284 F.3d 785, 790 (7th Cir. 2002). The party objecting to the discharge has the burden of proving all required elements by a preponderance of the evidence. Fed.R.Bank.P. 4005; In re Scott, 172 F.3d 959, 966-67 (7th Cir. 1999); In re Kent, 397 B.R. 438, 441 (Bankr. C.D. Ill. 2008).

Count I of the Trustee's Amended Complaint is brought pursuant to 11 U.S.C. §727(a)(2)(A), which provides in pertinent part as follows:

> (a)  The court shall grant the debtor a discharge, unless -
>
> * * * *
>
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed -
>
> (A) property of the debtor, within one year before the date of the filing of the petition[.]

11 U.S.C. §727(a)(2)(A).

In order to prevail on his objection to discharge, the Trustee must prove that (i) the Debtor, (ii) transferred, (iii) his property, (iv) with the intent to hinder, delay, or defraud a creditor, (v) within one year of his bankruptcy filing. In re Kontrick, 295 F.3d 724, 736 (7th Cir. 2002), *aff'd sub nom* Kontrick

-6-

v. Ryan, 540 U.S. 443, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004).

Debtor does not dispute that he endorsed both the sale proceeds check and his real estate commission check to his wife after the sale of their home. Although he testified that he did not consider the depositing of his funds into an account controlled solely by his wife to be a transfer of those funds, the Debtor's actions did technically constitute a transfer within the meaning of the statute. The Debtor yielded control of the funds to his wife and, although she verbally agreed to hold the funds for specific purposes, the Debtor retained no legal or equitable title to the funds. Absent further consent of his wife, Debtor had no ability to direct the disposition of the funds. The transfers occurred shortly after the July 2007 closing which was well within the one-year period preceding the Debtor's December 2007 case filing. Thus, the only remaining issue for decision is whether, in transferring the funds to his wife, the Debtor acted with actual intent to hinder, delay, or defraud a creditor.

Because a debtor is unlikely to admit to a fraudulent intent, a finding of actual intent to hinder, delay, or defraud a creditor may be established by circumstantial evidence and by inferences drawn from a debtor's course of conduct. McWilliams, 284 F.3d at 790. The Seventh Circuit has enumerated a number of factors related to transfers of property which, if established by the evidence, indicate the existence of actual fraud. The factors

include: (1) lack or inadequacy of consideration for the transfer; (2) a family, friendship, or close associate relationship between the parties; (3) the retention by the transferor of possession, benefit, or use of the property transferred; (4) the financial condition of the debtor/transferor; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threats of suits by creditors; and (6) the chronology of the events and transactions under inquiry. Id. *at* 791.

The Trustee relies on several of the McWilliams factors to argue that the evidence establishes that the Debtor had a fraudulent intent when he made the transfers. The Trustee notes that the transfers were from a husband to his wife and were made for no consideration. He points out that the Debtor retained the benefit of the transferred assets because they were used to pay his debts and expenses. The Trustee also notes the Debtor's poor financial condition and the fact that his only income in 2007 was the commission from the sale of his own home. In addition, it is undisputed that the Debtor was a defendant in at least 13 lawsuits at the time of the transfers. The Trustee concludes that the only people who benefitted from the transfers were the Carvers, their attorney, and Mr. Muscato, and that all of the Debtor's other creditors were left out in the cold.

Although the Trustee presented some circumstantial evidence

-8-

which could be construed to establish an intent of the Debtor to hinder, delay, or defraud a creditor, his evidence is insufficient to meet his burden of proof. Strong evidence of the Debtor's actual intent was provided by the Debtor and his wife and both were very credible witnesses. Mrs. Carver testified that she demanded that the Debtor transfer his share of the proceeds from the sale of the house and his real estate commission to an account controlled by her because she did not trust the Debtor to make any further financial decisions. She had a well-grounded fear that, if the Debtor had control of the money, he would make more real estate investments instead of paying his creditors. The Debtor went along with this arrangement because he realized that he had made a mess of his financial situation and that his wife and children had suffered the loss of their family home as a result. Mrs. Carver testified that she had considered divorce and had used her share of the house sale proceeds to purchase a small home that she could afford on her teacher's salary alone. Her testimony was clear that, after learning of her husband's financial problems, she had begun planning her future to independently provide for herself and her children. Debtor's testimony established an understanding of his wife's position and a strong desire on his part to do whatever it might take to save his marriage. The Court is persuaded by all of this testimony that the Debtor's intent in making the transfers was to save his marriage, and not in any way to hinder, delay, or

defraud a creditor. *See* In re Ratner, 132 B.R. 728, 732 (N.D. Ill. 1991) (debtor's transfer of house to wife was not made with intent to hinder, delay, or defraud his creditors where debtor's testimony that he made the transfer to save his marriage was credible and convincing).

The Court's conclusion that the Debtor lacked a fraudulent intent in making the transfers is buttressed by the ultimate disposition of the transferred funds. The funds were used to pay the debts and expenses of the Debtor. The Trustee makes no allegation and no evidence was presented that any of the funds were secreted away for Debtor's future use or used for any other improper purpose.

It is certainly true that transferring property to another party to hold may be done with the intent to hinder, delay, or defraud a creditor. *See, e.g.* Kent, 397 B.R. *at* 442-43 (discharge denied where debtor transferred property into names of family members in order to avoid imminent levy by the IRS); In re Beauchamp, 236 B.R. 727, 730 (9th Cir. BAP 1999), *judgment aff'd* 5 Fed.Appx. 743 (9th Cir. 2001) (discharge denied where debtor deposited his checks into a bank account titled in his current wife's name in order to conceal assets from his ex-wife and her father who were his creditors); In re Martin, 88 B.R. 319, 322-23 (D. Colo. 1988) (discharge denied where debtor closed account that was being garnished and opened another account in his wife's name

to avoid further garnishment). The evidence in this case does not, however, support a finding of fraudulent intent. The Debtor was the defendant in a number of lawsuits related to his rental properties, but there was no evidence that any creditor had a judgment against him and was poised to garnish or attach his property. The only creditor that the Debtor was concerned about was Mr. Muscato, and Mr. Muscato had not even filed suit against the Debtor at the time the transfers were made. Thus, there was no evidence that the Debtor was worried that, if he put his money in an account in his own name, the funds might be garnished before he could use them for his own purposes. To the contrary, the evidence established that the concern of both the Debtor and his wife was that, if the Debtor put the funds in an account under his own control, he might spend the money before it could be used to pay his creditors.

The Trustee has failed to prove by a preponderance of the evidence that the debtor's transfer of funds to his wife was done with the actual intent to hinder, delay, or defraud a creditor. The relief requested in Count I of the Trustee's Amended Complaint will be denied.

Count II of the Trustee's Amended Complaint is brought pursuant to 11 U.S.C. §727(a)(4)(A) of the Bankruptcy Code which provides in pertinent part as follows:

> (a) The court shall grant the debtor a discharge unless –

\* \* \* \*

>    (4) the debtor knowingly and fraudulently, in or in connection with the case –
>
>       (A) made a false oath or account[.]

11 U.S.C. §727(a)(4)(A).

The purpose of §727(a)(4) is to enforce a debtor's duty of disclosure and to ensure that the debtor provides reliable information to those who have an interest in the administration of the estate. In re Carlson, 231 B.R. 640, 655 (Bankr. N.D. Ill. 1999), *aff'd* 250 B.R. 366 (N.D. Ill. 2000), *aff'd* 263 F.3d 748 (7th Cir. 2001). In order to prevail under §727(a)(4), a plaintiff must establish five elements: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew that the statement was false; (4) the debtor made the statement with intent to deceive; and (5) the statement related materially to the bankruptcy case. In re Rothermel, 370 B.R. 185, 187 (Bankr. C.D. Ill. 2007), *aff'd* 2007 WL 3120118 (C.D. Ill. 2007), *aff'd* 274 Fed.Appx. 486 (7th Cir. 2008); In re Clarke, 332 B.R. 865, 872 (Bankr. C.D. Ill. 2005).

If made with the requisite fraudulent intent, a false statement, whether made in the schedules or orally at a creditors' meeting, is sufficient grounds for denying a discharge provided it was knowingly made and is material. In re Lunday, 100 B.R. 502, 508 (Bankr. D. N.D. 1989). It is a debtor's duty to consider the

questions posed on the schedules and at the creditors' meeting carefully and answer them accurately and completely. Id.

The Statement of Financial Affairs and schedules filed by the Debtor constitute statements under oath. In re Gannon, 173 B.R. 313, 320 (Bankr. S.D. N.Y. 1994). The Trustee has alleged that the Debtor's Statement of Financial Affairs and schedules contained the following inaccuracies:

1.  The Debtor did not disclose the transfer of his one-half of the real estate sale proceeds to his wife;

2.  The Debtor did not disclose that he had earned the real estate commission from the sale of the house and that he had transferred that commission to his wife;

3.  The Debtor did not identify accurately when he retained his attorney for debt consultation or bankruptcy; and

4.  The Debtor did not list his wife as a creditor on his schedules.

Debtor admits that he did not disclose the transfer of the house sales proceeds and commission to his wife and that he affirmatively represented that he had no income in 2007. He also admits that his initial disclosures regarding retaining his attorneys and paying fees for bankruptcy services included only fees and consultations beginning in November 2007 and did not include disclosure of the meetings and fees paid beginning in May 2007. Finally, the Debtor admits that he did not schedule his wife as a creditor.

Debtor's admissions are limited to the fact that certain information was not included in his Statement of Financial Affairs and schedules.  He does not admit that the failure to include the information constituted a false oath or that the failure to include the information was done knowingly and with fraudulent intent.  Further, he does not admit that the information not included was material.  To prevail on Count II, the Trustee must prove all of these elements.

To establish the requisite degree of fraudulent intent, the Trustee must prove that the Debtor knowingly intended to defraud or engaged in behavior which displayed a reckless disregard for the truth.  In re Baker, 205 B.R. 125, 132 (Bankr. N.D. Ill. 1997).  The requisite intent under §727(a)(4)(A) may be inferred from circumstantial evidence.  Id.  However, a discharge should not be denied where the untruth was the result of mistake or inadvertence.  In re Wheeler, 101 B.R. 39, 49 (Bankr. N.D. Ind. 1989).  To establish that inaccuracies are material, the trustee must establish that they pertain to the discovery of assets, past transaction, or the debtor's entitlement to a discharge.  Baker, 205 B.R. *at* 133, *citing* In re Gordon, 83 B.R. 78, 81 (Bankr. S.D. Fla. 1988).  However, the trustee may establish that information is material even without proof of specific detriment or prejudice.  Baker, 205 B.R. *at* 133.

With respect to the transfer to his wife of the house sale

proceeds and the real estate commission, the Debtor credibly testified that he did not realize that signing these funds over to his wife constituted transfers which had to be disclosed. However, the Court found that technical transfers occurred and the Debtor should have disclosed the transfers to his wife. Thus, the listing of transfers on Debtor's Statement of Financial Affairs is false in that the transfers to his wife were omitted from the list.

Even though the list of transfers contains a false representation, the Trustee failed to prove that the Debtor provided the false information with a knowing and fraudulent intent. The Debtor clearly disclosed the sale of the house, his receipt of more than $100,000 from the sale, and the payment of $85,000 to Mr. Muscato. The disclosure of these facts lead the Trustee to discover all additional relevant details regarding the sale and disposition of the funds. The Debtor testified that he had no idea that the fact that his wife held the funds was relevant or had any legal significance. There was no evidence of any failure of the Debtor to promptly respond to the Trustee's requests for additional details or documents. Accordingly, the Trustee has not established that the failure of the debtor to disclose the transfers of the funds to his wife was an omission made with knowing and fraudulent intent.

With respect to the issue of the disclosure of the real estate commission as income for 2007, the Settlement Statement from the

sale of the house shows that the Debtor and his wife paid the $30,300 total real estate commission from their funds and that the commission was split between the two brokers.  The evidence was not clear whether the portion of the commission which the Debtor ultimately received was a refund or income.  Further, no evidence was presented as to the exact amount the Debtor received.  If M-WRG took its share of the commission at the July 2007 closing and subsequently paid a portion of it to the Debtor as taxable income, then by the time of trial in October 2008 the Debtor should have a received a Form W-2 (wages) or Form 1099 (interest and dividend income).  The Trustee could have easily obtained copies of relevant documents from M-WRG but, apparently, did not.  Thus, no evidence of how the commission was paid or reported by the M-WRG was presented.  Further, no evidence was presented regarding whether the Debtor reported the commission as income on his 2007 income tax returns.

To prove that the failure to disclose the commission as income constituted a false oath, the Trustee must prove the commission was income.  Likewise, to prove a knowing and fraudulent intent in the non-disclosure, the Trustee must prove that the Debtor had knowledge that the commission was reportable income but, in the face of such knowledge, did not disclose the income.  Virtually no evidence regarding the commission was presented.  All the Court knows is that the Debtor received some portion of the commission

paid to M-WRG from the sale of the Carvers' home. The evidence regarding the commission payment was not well developed and can only be described as sketchy at best. Based on such limited evidence, this Court cannot find that the Trustee has proven by a preponderance of the evidence that the Debtor knowingly and fraudulently made a false oath when he failed to report the real estate commission as income on his Statement of Financial Affairs.

The Trustee also failed to establish that the Debtor knowingly and fraudulently made a false oath by failing to identify accurately when the Debtor retained his attorneys for debt consultation or bankruptcy. The Statement of Financial Affairs discloses that the Debtor paid his attorneys $2,000 in fees and $299 in costs on November 14, 2007 "for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of a petition in bankruptcy." The Trustee contends that the Debtor should have reported that he retained his attorneys in May 2007 when they had their first meeting about the Debtor's financial problems. The Court is not persuaded by this argument. Although the Debtor first met with his attorneys in May, 2007, the attorneys spent the summer and early fall of 2007 dealing with the various lawsuits against the Debtor, preparing deeds in lieu of foreclosure, and settling the dispute with Mr. Muscato. There is no evidence that the Debtor decided to file or that his attorneys began work on the bankruptcy case prior to November 2007. The

decision to report November 14, 2007, as the date the Debtor retained his attorney for debt consolidation or bankruptcy was made by the Debtor's attorneys who had full knowledge of all relevant facts necessary to answer this question on the Statement of Financial Affairs.  When the Trustee pursued the matter, complete time and billing records of the attorneys from May 2007 forward were provided to the Trustee.  The Trustee failed to prove that the disclosure of November 2007 as the time when the Debtor retained his attorneys for bankruptcy purposes was false and failed to prove any knowing or fraudulent intent of the Debtor with respect to his disclosures regarding the retention of his attorneys.

   The Trustee's argument that the Debtor made a false oath when he failed to list his wife as a creditor on his schedules is based on Mrs. Carver's testimony at trial that the Debtor "owed her". The Debtor, his attorney, and the Trustee all appeared surprised when Mrs. Carver made this statement.  It certainly appeared to the Court that, when Mrs. Carver made the statement, she was talking about more than just reimbursement for bills she had paid. Further, her assertion that the Debtor "owed her" does not necessarily mean that she had a legally enforceable claim against the Debtor or that the Debtor knew that his wife believed she had such a claim against him.  In the absence of any evidence to the contrary, the payments made by Mrs. Carver appear to have been the gratuitous type of payment that might be common for one spouse in

a marriage to make for another.  Without any proof that the Debtor actually had some legal obligation to his wife, the Debtor's failure to list his wife as a creditor cannot be found to be a knowing and fraudulent false oath.

Because, with respect to each of the Trustee's allegations, the Court has found no knowing and fraudulent intent, and with respect to all but one of the allegations, the Court has found that the Trustee failed to prove the information to be false, the Court does not reach the issue of whether any of the omitted information was material.  The Trustee has failed to meet his burden of proof on Count II of his Amended Complaint and the relief requested therein will be denied.  The Debtor's discharge will issue.

As a note of caution, nothing contained herein should be construed as the Court condoning the filing of incomplete or inaccurate schedules or Statements of Financial Affairs.  Debtors have a duty to provide complete information and the operation of the bankruptcy system depends on honest reporting.  <u>Payne v. Wood</u>, 775 F.2d. 202, 205 (7th Cir. 1985).  However, when allegations of false oaths are made, those allegations must be backed up at trial with competent evidence of the falsehoods and proof of a debtor's knowing and fraudulent intent to mislead the Trustee and creditors.  That evidence was simply not presented here.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

### 

See written Order.